Remo A. PULICELLI et al.

v.

BLACKSTONE SUBARU, INC., et al.

No. 97–353–Appeal.

Supreme Court of Rhode Island.

June 22, 1998.

Michael Hagopian, Cranston, for Plaintiff.

Edward Grourke, Pawtucket, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

PER CURIAM.

This case is here on appeal of the defendants, Blackstone Subaru, Inc., and Pride Chrysler–Plymouth, Inc., both Massachusetts corporations having their places of business in Seekonk, Massachusetts, from a final judgment in favor of the plaintiffs, Remo A. Pulicelli and Marc Zaccagnini (Zaccagnini), and from the denial of the defendants' motion for a new trial. The facts underlying this case center on the plaintiffs' purchase of and subsequent dissatisfaction with a vehicle sold by the defendant Blackstone Subaru, Inc. (Blackstone) and serviced under warranty by defendant Pride Chrysler–Plymouth (Pride), a Blackstone affiliate. A trial by jury determined that the plaintiffs had revoked their acceptance of the vehicle and were entitled to a refund of the purchase price, that the defendants had breached their implied warranty of merchantability, and that the defendants had committed an unfair or deceptive trade practice under Mass. Gen. Laws Ann. ch. 93A (West 1997).

After consideration of the prebriefing memoranda and discussion with counsel for the parties at a prebriefing conference, this case was assigned to the full court for a session in conference in accordance with Rule 12A(3)(b) of the Supreme Court Rules of Appellate Procedure. This Court has now carefully reviewed the record, including the memoranda filed by the parties, and we proceed to decide the case without further briefing and argument.

In June 1991, plaintiffs purchased a 1988 Chrysler LeBaron from defendant Blackstone. Prior to the purchase, a salesperson for Blackstone informed plaintiffs that the vehicle had never been in an accident and had had one prior owner. In fact, the vehicle had at least two prior owners and had been

in at least two accidents. Along with the vehicle, plaintiffs purchased a three-year extended service contract.

By May of 1992, Zaccagnini had brought the car to Pride for repairs on six different occasions for problems relating to the vehicle's exhaust, electrical, transmission, and ignition systems, idling, engine stalling, and failure to start. In May the car was brought in for repairs because of a "thumping" sound emanating from under the vehicle. The service manager told Zaccagnini that he could find nothing wrong, but the written service sheet indicated that a service person noticed that the vehicle's K frame, which supports the motor and suspension, had been broken and welded back together. Zaccagnini sought a second opinion from another dealer, Renzi Chrysler, who informed Zaccagnini about the damaged and welded K frame. Renzi Chrysler told Zaccagnini that the vehicle was unsafe to drive until the K frame was replaced and estimated the cost of such replacement as $1,045.

Zaccagnini advised Blackstone of the damaged K frame and asked that the car be repaired. Upon Blackstone's refusal to make the required repairs, Zaccagnini demanded a full refund on the vehicle. Upon Blackstone's refusal, plaintiffs initiated the instant action. Following a trial on the matter, the jury returned with special interrogatories, finding that Blackstone had breached its contract with plaintiffs, that plaintiffs were entitled to revoke acceptance of the vehicle, and that plaintiffs should recover the purchase price of the vehicle. Next, the jury determined that Blackstone had breached an implied warranty of merchantability, causing damages equal to the cost of replacing the K frame. Finally, the jury concluded that Blackstone had committed an unfair or deceptive trade practice under Mass. Gen. Laws ch. 93A by selling a car that it knew or should have known had a damaged and welded K frame. In regard to this count, the jury determined that Blackstone's conduct was not intentional and awarded no additional damages. The trial justice ruled that damages for breach of warranty would be cumulative in light of the award of the purchase price of the car under the revocation-

of-acceptance theory. However, the justice ruled that plaintiffs were entitled to attorney's fees in the amount of $9,700 plus costs.

General Laws 1956 § 6A–2–608, entitled "Revocation of acceptance in whole or in part," reads:

"(1) The buyer may revoke his or her acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him or her if he or she has accepted it:

(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) Without discovery of such nonconformity if his or her acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he or she had rejected them."

The defendants argued that the cracked and welded K frame was the only defect that was properly admissible to show nonconformity in the vehicle and that because the K frame was repairable, it did not substantially impair the value of the vehicle. We disagree. A review of the record has persuaded us that sufficient evidence existed for the jury to have determined that the K frame had been damaged and welded prior to the plaintiffs' purchase of the vehicle, that such a defect substantially reduced the value of the vehicle, and that the plaintiffs were reasonably induced into accepting the vehicle by Blackstone's salesperson's assurances that the vehicle had never been in an accident. *See East Side Prescription Center, Inc. v. E.P. Fournier, Co.,* 585 A.2d 1176, 1179 (R.I. 1991) (question of whether nonconformity substantially impairs value of contract is for jury to decide) (citing *Bergenstock v. Le-*

*may's G.M.C., Inc.*, 118 R.I. 75–82, 372 A.2d 69, 72 (1977)). Moreover, we are of the opinion that sufficient evidence existed to support the jury's finding that Blackstone knew or should have known that the vehicle had a defective K frame, contrary to the salesperson's representations.

For the foregoing reasons, the defendants' appeal is denied, the judgment of the Superior Court is affirmed.

GOLDBERG, J., did not participate.